# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GREGORY LYNN HARRIS,

    Petitioner,

vs.

MICHAEL BUDGE, et al.,

    Respondents.

Case No. 2:05-CV-01191-JCM-(LRL)

**ORDER**

    Before the court are the amended petition for writ of habeas corpus (#14), respondents' answer (#35), and petitioner's reply (#38). The court finds that petitioner is not entitled to relief and denies the amended petition (#14).

    Gary Arrington visited Las Vegas on January 19, 2002, checking into the Somerset House Motel. That evening, he obtained the services of Julie Heger, a prostitute, for a fee of $50. Ex. 9, pp. 53-54 (#15-10, pp. 56-57).[1] Afterward, Arrington paid Heger, and she left his room. Arrington then noticed that Heger had taken all of his money, around $1100, from his wallet. Id., pp. 54-55 (#15-10, pp. 57-58). Arrington pursued Heger and took her bag. He returned to his room. Id., pp. 60-63 (#15-10, p. 63, through #15-11, p. 2).

---

[1] Page numbers in parentheses refer to the court's computer images of the documents.

Not long after, petitioner kicked in the door of Arrington's room. Petitioner beat Arrington, and Heger soon arrived. Ex. 9, pp. 63-65 (#15-11, pp. 2-4). Both Arrington and Jeannette Espinosa, another guest at the Somerset House, testified that Heger, or a female voice, in Espinosa's case, told petitioner to take Arrington's wallet. Id., pp. 66, 98 (#15-11, pp. 5, 37). Heger herself took Arrington's wallet. Id., p. 66 (#15-11, p. 5). The two also took Arrington's cellular phone and rental car keys. Id., p. 67 (#15-11, p. 6). They left. Arrington went to the Somerset House's office to find that the clerk had already called 911. Id., p. 71 (#15-11, p. 10). The police arrived while Arrington was speaking with the operator. Id., pp. 71-72 (#15-11, pp. 10-11).

Meanwhile, Meta Snyder went to Heger's room at the Villa Roma Motel, which is a short distance west from the Somerset House. Snyder went there to buy rock cocaine from petitioner. Ex. 9, pp. 114-15 (#15-11, pp. 53-54). Snyder testified that Heger appeared bruised, though she admitted that photographs taken of Heger the next day showed no bruises. Id., at p. 115 (#15-11, p. 54). Snyder testified that Heger said that a client had robbed her, and that she and petitioner went back to retrieve the items. Id., at p. 113 (#15-11, p. 52). Snyder saw petitioner and Heger putting a lot of money into bags, and some money into petitioner's pocket. Id., at p. 106 (#15-11, p. 45). Snyder also saw a large quantity of rock cocaine in the room. Id., at p. 110 (#15-11, p. 49). After Snyder and Heger smoked some rock cocaine, Heger suggested going out for a meal. Snyder and Heger left petitioner alone in the Villa Roma room. Their path took them through the parking lot of the Somerset House.

At the same time, Arrington and a police officer were in that parking lot, checking whether Arrington's rental car had been stolen or whether he had left the keys in the car. The officer saw the two women and recognized from Arrington's description the bag that one woman

was carrying. The officer asked that woman to remove her jacket hood from her head, and Arrington recognized her as Heger. Ex. 9, p. 72 (#15-11, p. 11); Ex. 10, pp. 92-96 (#15-13, pp. 18-22).

The police advised Heger of her rights. Ex. 10, p. 27 (#15-12, p. 30). She consented to a search of her room at the Villa Roma. Id., p. 25 (#15-12, p. 28). The police went there with some concern that a firearm would be in the room. An officer tried to open the door with a room key, but a chain prevented the door from fully opening. A couple of officers heard the sound of porcelain touching porcelain, which in their experience indicated that somebody was concealing drugs in the tank of a toilet. Somebody behind the door resisted, but they kicked it open. Id., p. 109 (#15-13, p. 35). Inside they found a man named Kim Rice and petitioner, who was close to the bathroom. Id., pp. 31-32 (#15-12, pp. 34-35). They found 70 grams of rock cocaine in the toilet tank. Ex. 9, pp. 121-22 (#15-11, pp. 60-61). They found a gun in a clothes hamper. Ex. 10, p. 40 (#15-12, p. 43).

After a jury trial, petitioner was convicted of home invasion, burglary, conspiracy to commit robbery, robbery, trafficking in a controlled substance, and living from the earnings of a prostitute. The trial court adjudged petitioner to be a habitual criminal. Exs. 18, 19 (#16-8, #16-9). See also Nev. Rev. Stat. § 207.010. Petitioner appealed. The Nevada Supreme Court affirmed. Ex. 23 (#16-13).

Petitioner then filed a post-conviction petition for a writ of habeas corpus in state court. Ex. 26 (#16-16). The district court denied the petition. Ex. 29 (#16-19). Petitioner appealed. Ex. 31 (#17-2). The Nevada Supreme Court dismissed the appeal as untimely. Ex. 35 (#17-4).

Petitioner then filed a motion to vacate an illegal sentence in state court. Ex. 38 (#17-7). The district court denied the motion. Ex. 40 (#17-9). Petitioner did not appeal.

Petitioner then filed a second motion to correct an illegal sentence in state court. Ex. 40A (#17-10). The district court denied the motion. Ex. 45 (#18-5). Petitioner appealed. Ex. 43 (#18-3). The Nevada Supreme Court affirmed. Ex. 47 (#18-7).

Petitioner then commenced this action. The court determined that he had not exhausted his available state-court remedies for grounds 2 and 5. Order (#31). Petitioner dismissed those grounds. Decl. (#33).

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

-4-

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545 U.S. 1165 (2005).

In ground 1, petitioner claims that admission of hearsay testimony from Meta Snyder violates the confrontation clause of the Sixth Amendment. In question is Heger's declaration to Snyder that Heger and petitioner had robbed a client, i.e., Arrington. The Nevada Supreme Court held:

> In the instant case, Heger did not testify against Harris and the State did not violate Harris' Sixth Amendment right of confrontation.

Ex. 23, p. 9 (citations omitted). The Nevada Supreme Court's ruling was not an accurate statement of the law because it did not acknowledge that Heger's words could be used against Harris even though Heger was not testifying in court. If such words were testimonial in nature, their admission into evidence would violate the constitution. The Sixth Amendment requires that when the state

seeks to introduce *testimonial* statements given out of court, the declarant must be unavailable to testify and the statements must have been subjected to cross examination. *Crawford v. Washington*, 541 U.S. 36 (2004). However, Crawford is limited in scope. There, the Supreme Court identified three instances when a statement is testimonial: prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations. 541 U.S. at 68. Heger's statement to Synder does not fall within any of these categories. The Supreme Court has left the definition of "testimonial" open, but so far has not expanded upon it. Consequently, no clearly-established federal law regarding statements like Heger's exists, and the court cannot grant relief on this ground. See 28 U.S.C. § 2254(d)(1).

      Crawford applies to the petitioner's case because the Nevada Supreme Court did not decide his direct appeal until May 5, 2004, and the Supreme Court decided Crawford on March 8, 2004. See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 94-99 (1993).

      In ground 3, petitioner claims that his treatment as a habitual criminal violates due process and his right to trial by jury because Nev. Rev. Stat. § 207.010 requires judicial fact-finding that increases his sentence above the statutory maxima for the underlying crimes. The Court of Appeals for the Ninth Circuit has considered and rejected these arguments. See Tilcock v. Budge, ___ F.3d ___, 2008 WL 3546938 at *3-5 (9th Cir. August 15, 2008). Ground 3 is without merit.

      In ground 4, petitioner claims that the trial court failed to make particularized findings of fact that it was just and proper to treat petitioner as a habitual criminal. Section 207.010 requires no such findings. Tilcock, ___ F.3d at ___, 2008 WL 3546938 at *4 (citing O'Neill v. State, 153 P.3d 38 (Nev. 2007); Hughes v. State, 996 P.2d 890 (Nev. 2000) (per curiam)). O'Neill and Hughes note that a sentencing judge must know that habitual criminal adjudication is a matter

of discretion and not automatic upon finding the requisite number of prior convictions. In this case, the sentencing judge heard arguments at length from both sides about whether the judge should adjudicate petitioner as a habitual criminal. See Ex. 15. The very fact that the judge heard these arguments shows that she understood that sentencing was a matter of her discretion. Ground 4 is without merit.

In ground 6, petitioner claims that there was insufficient evidence to sustain the verdicts on three counts. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on . . . ." Ewing's Lessee v. Burnet, 36 U.S. 41, 50-51 (1837).

First, petitioner claims that the evidence was insufficient to sustain the verdict for trafficking. The law states:

> Except as otherwise authorized by the provisions of NRS 453.011 to 453.552, inclusive, a person who knowingly or intentionally sells, manufactures, delivers or brings into this State or who is knowingly or intentionally in actual or constructive possession of flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any

-7-

>controlled substance which is listed in schedule I, except marijuana, or any mixture which contains any such controlled substance, shall be punished, unless a greater penalty is provided pursuant to NRS 453.322, if the quantity involved:
>
>. . .
>
>3. Is 28 grams or more, for a category A felony by imprisonment in the state prison:
>
>(a) For life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or
>
>(b) For a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served,
>
>and by a fine of not more than $500,000.

Nev. Rev. Stat. § 453.3385. In petitioner's case, the court treated him as a habitual criminal. On this issue, the Nevada Supreme Court held:

>In the instant case, Snyder testified that she purchased cocaine from Harris. Snyder also testified that cocaine was on the bed next to Harris. Officer Baker testified that when the police prepared to enter the room, he heard the sound of a toilet lid dropping. In Baker's experience, this indicated that someone placed drugs in the toilet. Upon entry, the police took Harris into custody in front of the bathroom and impounded over seventy grams of rock cocaine from the room. The amount of cocaine indicates trafficking.
>
>The jury determined the credibility of Snyder and the other witnesses. We hold that sufficient evidence existed to convict Harris of trafficking.

Ex. 23, p. 10 (#16-13, p. 11). The testimony confirms the Nevada Supreme Court's ruling. One issue that petitioner raises is the presence of Kim Rice along with petitioner in the Villa Roma room when police entered. Petitioner argues that the rock cocaine could have just as easily belonged to Rice. However, Snyder testified that when she went to the Villa Roma room to purchase cocaine, only Heger and petitioner were in the room, along with the drugs. When Snyder and Heger left to

get food, they left petitioner alone with the drugs. Ex. 9, pp. 110-11 (#15-11, pp. 49-50). A jury could infer that petitioner had possession of the drugs. The Nevada Supreme Court reasonably applied Jackson. See 28 U.S.C. § 2254(d)(1).

Second, petitioner argues that there was insufficient evidence to support the verdict for conspiracy to commit robbery. The law states, in relevant part:

> 1. [W]henever two or more persons conspire to commit . . . robbery, . . . each person is guilty of a category B felony and shall be punished:
>
> (a) If the conspiracy was to commit robbery, . . . by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years . . . .

Nev. Rev. Stat. § 199.480. The Nevada Supreme Court held:

> Snyder testified that she questioned Heger about where Heger obtained the money. Heger told her "they robbed a trick." In a room close to Arrington's, Jeannette Espinosa heard a woman say three or four times, "[B]aby get his wallet." Arrington also testified that Heger told Harris to "take his wallet." Arrington identified Harris as the individual who beat him, kicked him, held him to the ground, and choked him while Heger stole his wallet. The jury heard this evidence and found that Harris was guilty of conspiracy to commit robbery. This evidence is sufficient for a reasonable jury to find Harris guilty beyond a reasonable doubt.

Ex. 23, p. 10 (#16-13, p. 11). In addition to the evidence outlined by the Nevada Supreme Court, Snyder testified on cross-examination, "The trick beat her up and robbed her, and then Julie and Greg went back to get it back," relating what Heger told her. The "it" that Heger and petitioner retrieved included the $1100 that Heger stole from Arrington, that Arrington took back from Heger, and that Heger and petitioner had no right to obtain. In light of the evidence presented, the Nevada Supreme Court reasonably applied Jackson. See 28 U.S.C. § 2254(d)(1).

-9-

Third, petitioner argues that the evidence was insufficient to support the verdict for living from the earnings of a prostitute. The law states:

> 1. A person who knowingly accepts, receives, levies or appropriates any money or other valuable thing, without consideration, from the proceeds of any prostitute, is guilty of a category D felony and shall be punished as provided in NRS 193.130.
>
> 2. Any such acceptance, receipt, levy or appropriation of money or valuable thing upon any proceedings or trial for violation of this section, is presumptive evidence of lack of consideration.

Nev. Rev. Stat. § 201.320. The Nevada Supreme Court held:

> Harris was living in a motel room registered to and presumably paid for by Heger. Additionally, Snyder testified that Harris would sent Heger out to work as a prostitute and that Harris did not have a job. Heger solicited Arrington for an act of prostitution and enlisted Harris' aid in robbing Arrington. This evidence is sufficient for a reasonable jury to convict Harris of living off the earnings of a prostitute.

Ex. 23, p. 11 (#16-13, p. 12). Petitioner's argument is based upon consideration: because petitioner gave Heger rock cocaine, Heger received consideration for all the money and support that she gave petitioner. Petitioner stretches the idea of consideration beyond what is reasonable for this case. While sometimes Heger bought rock cocaine from petitioner, the court cannot conclude that the rock cocaine covered either Heger's other deliveries of money to petitioner or Heger's payment of his living expenses. The Nevada Supreme Court reasonably applied <u>Jackson</u>. See 28 U.S.C. § 2254(d)(1).[2]

---

[2] Petitioner astutely argues that Snyder never testified that petitioner told Heger to go work as a prostitute. Amended Petition, p. 25 (#14). The trial transcript shows that the prosecutor asked Snyder about that and then immediately deviated into questions of prostitution jargon without ever giving Snyder the chance to answer the original question. Ex. 9, p. 108 (#15-11, p. 47). However, directing a person to become a prostitute is not an element of the crime, and Snyder's non-answer does not affect the court's analysis.

IT IS THEREFORE ORDERED that the amended petition for writ of habeas corpus (#14) is **DENIED**. The clerk of the court shall enter judgment accordingly.

DATED: September 18, 2008.

_____
JAMES C. MAHAN
United States District Judge

-11-